UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXPORT-IMPORT BANK OF THE
UNITED STATES,

                    Plaintiff,

       - against -

HI-FILMS S.A. de C.V., MIGUEL ANGEL
PEREDO LUNA, ADRIAN PEREDO
LUNA, and GABRIELA PEREDO LUNA,

                    Defendants.

09 Civ. 3573 (PGG)

**MEMORANDUM OPINION
AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiff Export-Import Bank of the United States (the "Bank")

brings breach of contract claims against Defendants Hi-Films S.A. de C.V. ("Hi-Films"), Miguel

Angel Peredo Luna, Adrian Peredo Luna, and Gabriela Peredo Luna arising from multiple

promissory notes.  The Bank seeks to recover monies due under promissory notes executed by

Hi-Films and to enforce guarantees of payment made by Defendants Miguel Peredo Luna,

Adrian Peredo Luna, and Gabriela Peredo Luna.

        Defendant Miguel Angel Peredo Luna ("Luna") has moved to dismiss pursuant to

Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and on <u>forum non conveniens</u> grounds.

In the alternative, Luna asks this Court to stay this action.[1]

        For the reasons stated below, Luna's motion to dismiss and request for a stay will

be DENIED.

---

[1]  Only Luna has been served in this action, because the Bank lacks current addresses for the
remaining defendants.  (Ex-Im Br. 8)

## BACKGROUND

Export-Import Bank of the United States is a corporation organized and existing under federal law as an agency of the United States, created pursuant to 12 U.S.C. § 635. (Cmplt. ¶ 1)  The Bank is the official export credit agency for the United States, and promotes domestic exports by providing financial support for sales to foreign purchasers.  (Id. ¶ 9)  Under its export credit insurance program, the Bank insures loans made by financial institutions to foreign borrowers for these borrowers' purchase of U.S. goods and services.  (Id. ¶ 11)  "In the event of a payment default by a borrower (and by any third-party guarantor of the borrower's obligations), the insured lender files a claim for payment with Ex-Im Bank under its export credit insurance policy."  (Id.)  The Bank then pays to the lender an amount up to the "outstanding principal and interest on the loan and is assigned the lender's rights to the debt and any associated security interests."  (Id. ¶ 12)  This suit arises from a series of transactions approved under the Bank's export credit insurance program. (Id. ¶ 13)

Hi-Films is a corporation organized and existing under the laws of Mexico, with its principal place of business in Mexico City, Mexico.  (Id. ¶ 5)  The Bank alleges that Luna resides in San Diego County, California.  (Id. ¶ 6)  Luna disputes this allegation, stating that he lives in Huertas Del Carmen, Queretaro, Mexico.  (Luna Decl. ¶ 2; Luna Br. 6)  For purposes of this motion, this Court will assume that Luna resides in Mexico.

The Complaint alleges that on August 25, 2004, Hi-Films, as borrower, and Defendants Miguel Peredo Luna, Adrian Peredo Luna, and Gabriela Peredo Luna, as guarantors, executed an agreement entitled "Eximbank Insured Medium Term Export Credit Facility" (Cmplt., Ex. A (the "August 25, 2004 Sterling Loan Agreement")) with Sterling Bank ("Sterling"), as lender, to obtain a loan in the amount of $2,534,513.00 to finance the purchase of plastic film-making equipment.  (Id. ¶ 14)  On September 8, 2004, Hi-Films executed a

promissory note (Cmplt., Ex. B (the "September 8, 2004 Sterling Note")) payable to the order of

Sterling or its successor or assignee, promising to pay the full $2,543,513.00 in ten installments,

plus interest, as specified in the note.  (Id. ¶ 15)  Defendants Miguel Peredo Luna, Adrian Peredo

Luna and Gabriela Peredo Luna ("the Personal Guarantors") jointly and severally, and

irrevocably and unconditionally, guaranteed the payment of the September 8, 2004 Sterling

Note.  (Id. ¶ 16)

On or about November 8, 2004, Hi-Films, as borrower, and the Personal

Guarantors, as guarantors, executed another agreement entitled "Eximbank Insured Export Credit

Facility" (Cmplt., Ex. F (the "November 8, 2004 Sterling Credit Agreement")) with Sterling, as

lender, to obtain a revolving line of credit in the maximum amount of $2 million to finance the

purchase of plastic film, resin and related products.  (Id. ¶ 30)  Under the terms of the November

8, 2004 Sterling Credit Agreement, "Hi-Films received four loans from Sterling, each of which

was made pursuant to a promissory note, with the total of these loans amounting to

$1,998,694.72."  (Id. ¶ 31; see id., Exs. G-J (collectively "the 2005 Sterling Notes"))  Hi-Films,

as borrower, and the Personal Guarantors, as guarantors, executed these promissory notes

> on May 3, 2005 (Cmplt., Ex. G (the "May 3, 2005 Sterling Note")), for $600,000
> to be paid, plus interest, on October 22, 2005;
>
> on May 13, 2005 (Cmplt., Ex. H (the "May 13, 2005 Sterling Note")), for
> $599,950 to be paid, plus interest, on November 4, 2005;
>
> on September 2, 2005 (Cmplt., Ex. I (the "September 2, 2005 Sterling Note")) for
> $401,236 to be paid, plus interest, on February 22, 2006; and
>
> on September 7, 2005 (Cmplt., Ex. J, the "September 7, 2005 Sterling Note") for
> $398,744.00 to be paid, plus interest, on March 1, 2006. (Id. ¶¶ 32-60).

On or about June 15, 2004, Hi-Films, as borrower, and the Personal Guarantors,

as guarantors, executed a Term Credit Agreement with WorldBusiness Capital, Inc. ("WBC"), as

lender, to obtain a line of credit in the maximum amount of $2,368,671 to finance the purchase

of plastic extrusion equipment.  (Cmplt. ¶ 72, Ex. M (the "June 15, 2004 WBC Credit

Agreement"))  On June 16, 2004, Hi-Films executed a promissory note payable to the order of

WBC or its successor or assignee, in the principal amount of $2,368,671 to be paid in nine

installments, plus interest.  (Id. ¶ 73, Ex. N (the "June 16, 2004 WBC Note"))

        On or about November 15, 2005, Hi-Films defaulted on the September 8, 2004

Sterling Note.  (Id. ¶ 23)  In a letter dated March 7, 2006, Sterling demanded payment under the

September 8, 2004 Sterling Note and each of the 2005 Sterling Notes, and notified Hi-Films and

the Personal Guarantors that they were in default under these promissory notes.  (Id. ¶¶ 24, 66,

Ex. C (the "March 7, 2006 Sterling Demand Letter"))  On or about March 8, 2006, Sterling filed

a Notice of Claim and Proof of Loss with the Bank in which Sterling, inter alia, assigned the

Bank "all right, title and interest in, and all sums of money now due, or to become due" under the

2005 Sterling Notes in the event that the Bank paid part of the loss that Sterling had incurred.

(Id. ¶ 67, Ex. K (Mar. 8, 2006 Notice of Claim and Proof of Loss))  On March 10, 2006, Sterling

filed a Notice of Claim and Proof of Loss with the Bank in which Sterling, inter alia, assigned to

the Bank "all right, title and interest in, and all sums of money now due, or to become due" to

Sterling from Hi-Films and the Personal Guarantors under the September 8, 2004 Sterling Note.

(Id. ¶ 25, Ex. D (Mar. 10, 2006 Notice of Claim and Proof of Loss))  The Bank then paid Sterling

the principal amount due plus interest, and – in letters dated April 19, 2006 (Id., Ex. E (the

"April 19, 2006 Ex-Im Demand Letters")) – demanded payment from Hi-Films and the Personal

Guarantors for the amount due under the September 8, 2004 Sterling Note.  (Id. ¶¶ 26-27)

Hi-Films ultimately defaulted on all promissory notes made to Sterling:  on or about October 22, 2005, Hi-Films defaulted on the May 3, 2005 Sterling Note; on or about November 4, 2005, Hi-Films defaulted on the May 13, 2005 Sterling Note; on or about February 22, 2006, Hi-Films defaulted on the September 2, 2005 Sterling Note; and on or about March 1, 2006, Hi-Films defaulted on the September 7, 2005 Sterling Note.  (Id. ¶¶ 61-64)  And on or about March 5, 2006, Hi-Films defaulted on the June 16, 2004 WBC Note.  (Id. ¶ 80)

As each of the 2005 Sterling Notes became due and payment was not made, Sterling and the Bank demanded payment from Hi-Films and the Personal Guarantors.  (Id. ¶¶ 65, 66, 69)  Hi-Films, Luna, and the other Personal Guarantors never made any payment to Sterling or to the Bank in response to the written demands, however.  (Id. ¶ 70)

On or about March 8 and March 20, 2006, Sterling assigned all remaining Sterling promissory notes and the WBC promissory note, respectively, to the Bank, which paid Sterling the total past principal and interest installments due under the notes.  (Id. ¶¶ 67-68)

The Bank alleges that as of March 4, 2009, the total outstanding balance due the Bank under the Sterling Promissory Notes is $2,770,238.65 (Id. ¶ 71), while $2,762,810.30 is due and owing under the WBC Promissory Note.  (Id. ¶ 87)  "Pursuant to the terms of these promissory notes, interest continues to accrue."  (Id. ¶ 71)

The terms of the promissory notes are virtually identical.  Each promissory note contains a forum selection clause stating that

> [f]or any legal action or proceeding with respect to this Note, the Maker, the lender and any other signatories hereof expressly submit themselves to any Federal District Court of the United States of America in New York, or the District of Columbia, or to any competent court in Mexico City, Federal District, United Mexican States, or to the courts of the domicile of the Maker, at the election of the holder hereof, wherefore they waive expressly any other jurisdiction to which they might have a right, including, but not limited to, every

> jurisdiction by reason of their present or future domiciles or by reason of the place of payment of this Note.

(September 8, 2004 Sterling Note, at 7-8; May 3, 2005 Sterling Note, at 4; May 13, 2005 Sterling Note, at 4; September 2, 2005 Sterling Note, at 4; September 7, 2005 Sterling Note, at 4; June 16, 2004 WBC Note, at ¶ XI) (hereinafter "Forum Selection Clause")

> Each personal guarantee provision executed by the Personal Guarantors states:

> To the maximum extent permitted by law, the undersigned also waives all defenses of the Maker and all defenses of a surety or guarantor to which it might be entitled by statute or otherwise.

(September 8, 2004 Sterling Note, at 11; May 3, 2005 Sterling Note, at 7; May 13, 2005 Sterling Note, at 7; September 2, 2005 Sterling Note, at 7; September 7, 2005 Sterling Note, at 7; June 16, 2004 WBC Note, at 7) (hereinafter "Waiver Provision"); (see also Cmplt. ¶ 21). Hi-Films and the Personal Guarantors further agreed that New York state law would apply to any action brought in a U.S. court seeking to enforce the terms of the promissory notes. (Cmplt. ¶ 77; September 8, 2004 Sterling Note, at 7; May 3, 2005 Sterling Note, at 4; May 13, 2005 Sterling Note, at 4; September 2, 2005 Sterling Note, at 4; September 7, 2005 Sterling Note, at 4; June 16, 2004 WBC Note ¶ X) (hereinafter "Choice of Law Clause")

The Bank filed this suit on April 8, 2009, alleging, inter alia, breach of contract claims against Hi-Films and the Personal Guarantors in connection with their failure to make payment on the Sterling Promissory Notes and the WBC Promissory Note. (Cmplt. ¶¶ 88-135) Luna filed the instant motion on September 17, 2009. (Docket No. 11)

## DISCUSSION

Luna has moved to dismiss, contending that this Court lacks personal jurisdiction over him, and that this action should be dismissed on forum non conveniens grounds.  In the event that this action is not dismissed, Luna argues that it should be stayed until all the defendants are served.

The Bank argues that Luna's motion should be denied because the parties entered into agreements containing a binding forum selection clause.  The Bank also opposes Luna's stay request, arguing that it would be prejudiced by a stay and that Luna has not explained how he would be prejudiced in the absence of a stay.

## I.   LUNA'S MOTION TO DISMISS WILL BE DENIED

On a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff "'bears the burden of establishing that the court has jurisdiction over the defendant.'"  Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 440 (S.D.N.Y.2008) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)).  Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.  See Koninklijke Philips Elecs. v. Digital Works, Inc., 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue."); ICC Indus. v. Isr. Disc. Bank, Ltd., No. 04 Civ. 6945(DC), 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005) ("A clause in which parties consent to a given jurisdiction 'satisfies constitutional requirements of due process, and will be enforced unless it would be unreasonable or unjust to do so.'" (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Frasch, 751 F. Supp. 1075, 1078 (S.D.N.Y.1990))); Farrell Lines v. Columbus

Cello-Poly Corp., 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997) ("It is well-settled that jurisdiction by consent satisfies constitutional principles of due process. . . ." (internal citation and quotations omitted)).

   "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  D.H. Blair & Co., Inc. v. Gottdiemen, 462 F.3d 95, 103 (2d Cir. 2006) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-316 (1964) ("it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court")).  Here, Luna consented to jurisdiction in the Southern District of New York when he executed each of the promissory notes.

   Consequently, so long as the forum selection clauses are found valid and enforceable, they are sufficient to establish this Court's personal jurisdiction over Luna.  See D.H. Blair & Co., 462 F.3d at 103 (2d Cir. 2006); Koninklijke Philips Elecs, 358 F. Supp. 2d at 333 ("Although defendant maintains that New York does not have personal jurisdiction over it, defendant irrevocably waived its right to challenge personal jurisdiction and venue when it voluntarily consented and agreed to the forum selection clause provided for in the Agreement."); Farrell Lines, Inc. v. Columbus Cello-poly Corp., 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997) ("An enforceable forum selection clause amounts to consent to personal jurisdiction.").

  **A.**  **The Forum Selection Clauses Are Valid and Enforceable**

   The Second Circuit conducts a four-part analysis in determining whether a forum selection clause is enforceable:

    Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis.  The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply

permitted to do so.  See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir. 1994).  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.  See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-61 (2d Cir. 1993).

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  See id. at 1362-63.  The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions); see Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982) (applying Bremen standard to contractual dispute between domestic parties in non-admiralty context).

Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-384 (2d Cir. 2007).[2]

### 1.     The Forum Selection Clause Was Reasonably Communicated to Luna

"The Second Circuit 'regularly enforce[s] forum selection clauses as long as 'the existence of the clause was reasonably communicated to the parties.'"  Tradecomet.com, LLC, 693 F. Supp. 2d at 377 (quoting D.H. Blair & Co., 462 F.3d at 103).  Here, the forum selection

---

[2]  The forum selection clauses each contain a choice of law provision dictating that New York law applies to any proceeding that occurs in the United States.  The "Second Circuit has discussed – but not decided – what law to apply to a forum selection clause when the contract also contains a choice of law provision."  TradeComet.com, LLC v. Google, Inc., 693 F. Supp. 2d 370, 376-77 (S.D.N.Y. 2010) (citing Phillips, 494 F.3d at 384).  Phillips indicates, however, that where, as here, the parties rely on federal precedent rather than the law cited in their choice of law provision (see Luna Br. 8; Ex-Im Br. 9-10), a court is free to "apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause."  Phillips, 494 F.3d at 386 (citing Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law."); John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (applying general contract law principles to interpret forum clause where parties made little reference to English law)).  See also Cfirstclass Corp. v. Silverjet, PLC, 560 F. Supp. 2d 324, 328 n.2 (S.D.N.Y. 2008) ("[W]here, as here, the parties do not invoke [the law of England] in their briefs, courts may apply 'general contract law principles and federal precedent to discern the meaning and scope of the forum clause.'" (quoting Phillips, 494 F.3d at 386)).  Accordingly, this Court will apply federal precedent and general contract law principles to all four prongs of the analysis.

clauses were plainly printed (in both English and Spanish) in separate, set-off paragraphs, in multiple agreements – ranging in length from eight to twelve pages – which Luna signed over a period of many months.  Moreover, Luna does not contend that he was unaware of the forum selection clauses.  Under these circumstances, this Court finds that the forum selection clauses were reasonably communicated to Luna.[3]  See, e.g. Thibodeau v. Pinnacle FX Invs., No. 08 Civ. 1662 (JFB), 2008 U.S. Dist. LEXIS 90440, at *16-17 (E.D.N.Y. Nov. 6, 2008) ("[T]he clause was reasonably communicated to the plaintiff.  The contract was fourteen pages long, the terms of which, including the clause at issue, were clearly delineated in the first seven pages."); Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., No. 03 Civ. 5262 (JFK), 2004 U.S. Dist. LEXIS 3508, at *12 (S.D.N.Y. Mar. 5, 2004) (finding that forum selection clause had been reasonably communicated where it "was in no way hidden . . . or buried in contract minutiae . . . [and] was its own paragraph, set-off by a title clearly indicating its purpose").

## 2.    The Forum Selection Clause is Mandatory

"The enforcement of forum selection clauses in international disputes is governed by M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)."  Aguas Lenders Recovery Grp. LLC v. Suez, S.A., 585 F.3d 696, 700 (2d Cir. 2009).  "M/S Bremen noted the important role of forum selection and choice of law clauses in eliminating uncertainty . . . and held that such clauses are entitled to a presumption of enforceability."  Aguas Lenders, 585 F.3d at 700.

---

[3]  That Luna "did not have an opportunity to negotiate the terms of the agreement[s]" and had to accept them on an "'as is' basis" (Luna Decl. ¶ 5) is irrelevant to the "reasonably communicated" inquiry.  See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10-11 (2d Cir. 1995) (finding clause reasonably communicated where the "fine print" forum selection clause was printed on a non-negotiable cruise line ticket); Universal Grading Serv. v. eBay, Inc., No. 08 Civ. 3557 (CPS), 2009 WL 2029796, at *12 (E.D.N.Y. June 12, 2009) ("[C]ourts in this Circuit have held that a clear and unambiguous forum selection clause is 'reasonably communicated' to a plaintiff where the plaintiff is required to assent to an online user agreement . . . which contains the clause.").

Where parties contract to a so-called "mandatory forum selection clause, in which they agree in advance on a forum that is exclusive of all others, the choice of forum is accorded the M/S Bremen presumption of enforceability."  Aguas Lenders, 585 F.3d at 700 (citing Phillips, 494 F.3d at 386).  In contrast, "where parties contract to a so-called permissive forum selection clause, that is, one that designates a forum in advance, but does not preclude a different choice of forum, the M/S Bremen presumption of enforceability does not apply."  Aguas Lenders, 585 F.3d at 700.

Here, the forum selection clauses state that

[f]or any legal action or proceeding with respect to this Note, the Maker, the lender and any other signatories hereof expressly submit themselves to any Federal District Court of the United States of America in New York, or the District of Columbia, or to any competent court in Mexico City, Federal District, United Mexican States, or to the courts of the domicile of the Maker, at the election of the holder hereof, wherefore they waive expressly any other jurisdiction to which they might have a right, including, but not limited to, every jurisdiction by reason of their present or future domiciles or by reason of the place of payment of this Note.

(Forum Selection Clause) (emphasis added).

Each personal guarantee provision executed by the Personal Guarantors states:

To the maximum extent permitted by law, the undersigned also waives all defenses of the Maker and all defenses of a surety or guarantor to which it might be entitled by statute or otherwise.

(Waiver Provision)

In Aguas Lenders, the Second Circuit held that where a party waives any claims of forum non conveniens and agrees to a forum selection clause that permits the plaintiff to dictate the forum, that "combination" "amounts to a mandatory forum selection clause[,] at least where the plaintiff chooses the designated forum, as [plaintiff] did here."  Aguas Lenders, 585 F.3d at 700 (citing AAR Int'l Inc. v. Nimelia's Enter, S.A., 250 F.3d 510, 525-526 (7th Cir.

2001) ("[I]n this case we have more than merely a permissive forum selection clause; we have

such a clause plus unambiguous language providing that the lessee shall not object to venue

. . . on the ground . . . [of] inconvenient forum. . . . [W]e conclude that the stricter standards

announced in <u>Bremen</u> . . . should control. . . .")).

   Applying these principles here, it is clear that the parties agreed to forum selection

clauses that are mandatory.  The forum selection clauses specify jurisdictions that the parties

must submit themselves to, and then state that the choice of jurisdiction is "at the election of the

holder."  (Forum Selection Clause)  In agreeing to the forum selection clauses, the Maker, the

lender, and any other signatories also "expressly waive any other jurisdiction to which they

might have a right," including "every jurisdiction by reason of their present or future domiciles

or by reason of the place of payment of this Note."  (<u>Id.</u>)  Finally, Luna and the other guarantors

waived "all defenses of the Maker and all defenses of a surety or guarantor" "to the maximum

extent permitted by law."  Under these provisions, the holder's choice of forum is binding, and

the other parties have waived any personal jurisdiction or <u>forum non conveniens</u> arguments.

   Luna argues, however, that three alternative venues other than New York are

mentioned in the forum selection clauses, and that this "conclusively demonstrates that venue in

New York is anything but mandatory." (Luna. Br. 7)  Courts considering language similar to that

at issue here have uniformly rejected Luna's argument.

   <u>Argonaut P'ship L.P. v. Bankers Tr. Co.</u>, No. 96 Civ. 1970 (MBM), 1997 U.S.

Dist. LEXIS 1092, at *42 (S.D.N.Y. Feb. 4, 1997), involved the following forum selection

clause:

> For the interpretation and fulfillment of this Contract, the parties are subject
> specifically to the jurisdiction and authority of the courts of the metropolitan zone
> of the City of Guadalajara, Jal., Mexico, or to the local or federal courts with
> jurisdiction with headquarters in the city, county and State of New York, at the

> choice of the plaintiff, waiving any other jurisdiction that might correspond by
> virtue of their present or future domiciles.

Judge Mukasey determined that this clause was mandatory despite the fact that "at first glance [it] seems permissive," because it gives "both the courts of New York and the courts of Gaudalajara jurisdiction." Id. Two features of the clause supported this conclusion. First, Judge Mukasey interpreted the phrase "at the choice of the plaintiff" to indicate that the clause was mandatory, because "[i]f, once the plaintiff chooses a forum, the defendant could nevertheless force transfer . . . to the other forum, the words 'at the choice of the plaintiff' would be superfluous." Id. at *43. Second, Judge Mukasey interpreted the phrase "waiving any other jurisdiction that might correspond by virtue of their present or future domiciles" as creating a mandatory clause, because "[t]hrough this phrase, the defendant waives all jurisdictions other than Guadalajara and New York." Id. Considering the two phrases together, Judge Mukasey concluded that "the clause effectively creates jurisdiction in only one place: the forum plaintiff chooses – either New York or Guadalajara." Id. See also City of New York v. Pullman Inc., 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979) (Weinfeld, J.) ("[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion, or it leaves it in the control of one party with the power to force on its own terms the appropriate forum." (emphasis added)).

> The forum selection clauses here are on all fours with the clause in Argonaut P'ship. Like the clause in Argonaut P'ship, the forum selection clauses here list a number of courts in which the parties agree jurisdiction would be proper, but leave it to one party – here, "the holder" – to determine where in fact a lawsuit will proceed. (See Forum Selection Clause) Furthermore, here, as in Argonaut P'ship, Hi-Films, Luna, and the other guarantors "waive[d] expressly any other jurisdiction to which they might have a right, including, but not limited to,

every jurisdiction by reason of their present or future domiciles or by reason of the place of payment of this Note," making the holder's choice of forum binding and exclusive. The forum selection clauses at issue here are mandatory.

### 3.      The Claims and Parties Are Subject to the Forum Selection Clause

The parties do not dispute that the claims and the parties involved here are subject to the forum selection clauses. Each clause states that it applies "[f]or any legal action or proceeding with respect to this Note" (Forum Selection Clause), and there is no dispute that the Bank and Luna are parties to the agreements containing the forum selection clauses. Accordingly, the forum selection clauses apply to this action.

### 4.      Luna Has Not Rebutted the Presumption of Enforceability

"If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Phillips, 494 F.3d at 383 (citing Roby, 996 F.2d at 1362-63). The fourth and final step of the inquiry is to determine "whether the resisting party has rebutted the presumption of enforceability." Id. at 384. A party may overcome the presumption of enforceability by making a "sufficiently strong showing" that the clause is unenforceable because (1) "its incorporation was the result of fraud or overreaching"; (2) "the law to be applied in the selected forum is fundamentally unfair"; (3) "enforcement contravenes a strong public policy of the forum state"; or (4) "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips, 494 F.3d at 383, 392 (citing Roby, 996 F.2d at 1363). Here, Luna appears to argue that he was the victim of fraud or overreaching, that enforcement of the forum selection clauses would contravene a strong public policy of the forum

state, and that trial here will be so difficult and inconvenient that he will be deprived of his day in court.

   With regard to whether incorporation of the forum selection clauses was due to fraud or overreaching, Luna contends that he did not have an "opportunity to negotiate the terms of the agreements . . . and that the agreements were presented on an 'as is basis'" (Luna Br. 8; see Luna Decl. ¶ 5 )  This is not sufficient to establish fraud or overreaching.  See G&R Moojestic Treats Inc. v. MaggieMoo's Int'l, LLC, No. 03 Civ. 10027 (RWS), 2004 U.S. Dist. LEXIS 8806, at *9-11 (S.D.N.Y. May 19, 2004) ("The. . .Plaintiffs have not made the 'strong showing' required to prove that the forum selection clause was the result of fraud or coercion. . . . The fact that the . . . Agreement was presented on a take it or leave it basis and was not subject to negotiation renders it neither a contract of adhesion nor unconscionable."); Vitricon, Inc. v. Midwest Elastomers, Inc., 148 F. Supp. 2d 245, 248 (E.D.N.Y. 2001) ("Courts have consistently rejected the argument that forum selection clauses contained in pre-printed contracts are unenforceable."); K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Intern. Spedition, 36 F. Supp. 2d 200, 203 (S.D.N.Y. 1999) (finding forum selection clause enforceable even though parties did not discuss or negotiate it); Strategic Mktg. & Communs. v. Kmart Corp.., 41 F. Supp. 2d 268, 272 (S.D.N.Y. 1998) ("A forum selection clause can bind contracting parties even when the contract in question is a form contract and not subject to negotiation."); Stamm v. Barclays Bank, 960 F. Supp. 724, 733 (S.D.N.Y. 1997) (finding forum selection clause not unconscionable despite the fact that the clause is "now disadvantageous to Plaintiffs" and that it was presented to plaintiffs on a take it or leave it basis).

   As to whether trial here will be so difficult and inconvenient for Luna that he will be deprived of his day in court, Luna argues that because he resides in Mexico and has serious

financial problems, "it would be extremely difficult for him to guarantee his ability to travel back

and forth to New York."  (Luna Br. 9; see Luna Decl. ¶ 6)  Luna further argues that he will face

difficulties "in obtaining documents and compelling witnesses that are located in Mexico."

(Luna Br. 9; see Miguel Peredo Luna Decl. ¶ 4)

   Such arguments do not constitute the "sufficiently strong showing" necessary to

rebut the presumption of enforceability.  See Martin v. Creative Mgmt. Grp., Inc., No. 10 Civ.

2214 (DLC), 2010 U.S. Dist. LEXIS 66092, at *6 (S.D.N.Y. June 29, 2010) (defendant's

argument that "few, if any, of [defendant's] witnesses or documents are located in Florida,

rendering litigation in that state impossible," was insufficient to rebut presumption of

enforceability, because plaintiff "has shown only that litigation in Florida 'may be more costly or

difficult, but not that it is impossible'" (quoting Phillips, 494 F.3d at 393)); Zuckerman v. Laurel,

No. 08 Civ. 3913 (NRB), 2008 U.S. Dist. LEXIS 74373, at *6 (S.D.N.Y. Sept. 24, 2008)

("Although a trial in Maine would be more difficult for plaintiffs, it certainly would not

effectively deprive them of their day in court.").

   The Second Circuit rejected similar arguments in Phillips, determining that the

cost and difficulties associated with litigating in a foreign forum were insufficient to rebut the

presumption of enforceability.  The plaintiff in Phillips brought suit in New York, but had signed

a forum selection clause that bound the parties to litigate in England.  Plaintiff contended that the

clause should not be enforced because "none of his witnesses, documents, or any parties to the

action are located in England, rendering litigation in that country impossible."  Phillips, 494 F.3d

at 393.  In rejecting plaintiff's arguments, the Second Circuit noted that "[t]he gap in [plaintiff's]

reasoning is that his averments suggest that litigation in England may be more costly or difficult,

but not that it is impossible."  Id.  Because plaintiff had "not declared any of his claimed

hardships are other than the obvious concomitants of litigation abroad . . . or were not foreseeable when he agreed to litigate in England," the Philips court enforced the forum selection clause.  Id. (citations omitted).

   Similarly here, Luna's arguments regarding the cost and difficulty associated with litigating in New York are insufficient to rebut the presumption of enforceability.  See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10-11 (2d Cir. 1995) (enforcing clause requiring U.S. citizen to litigate in Greece and noting that the distance between a selected forum and pertinent parties or places did not render a forum inconvenient if readily accessible by air travel; the fact the contract "designates a foreign court as the forum for adjudication does not change the inconvenience calculus").

   Defendant's personal financial difficulties are likewise insufficient to rebut the presumption of enforceability.  See Mercury West A.G., Inc., 2004 U.S. Dist. LEXIS 3508, at *10 (S.D.N.Y. Mar. 5, 2004) (small company claimed financial distress but court nonetheless enforced forum selection clause because "[s]imply claiming financial distress does not warrant setting aside a valid forum selection clause" (citing Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007, 1012 (S.D.N.Y. 1985) (enforcing forum selection clause even though party was bankrupt)); see also Universal Grading Serv. v. eBay, Inc., No. 08 Civ. 3557 (CPS), 2009 U.S. Dist. LEXIS 49841, at *75 (E.D.N.Y. June 9, 2009) ("Although it is more burdensome on plaintiffs to require them to travel to California than it would be on defendants to require them to travel to New York, monetary hardship alone does not defeat the operation of a forum selection clause with regard to those . . . who are bound by it."); J. B. Harris, Inc. v. Razei Bar Indus., Ltd., 37 F. Supp. 2d 186, 190 (E.D.N.Y. 1998) ("Plaintiff has failed to demonstrate that [plaintiff corporation's] 'financial [] devastation' or

[corporation president's] fear of traveling to Israel . . .warrant disregarding the parties' explicit agreement to resolve disputes in Israel.").

        Luna also claims that because he resides in Mexico, "it would be extremely difficult for [him] to travel back and forth to New York," given the "immigration laws of the United States."  (Luna Decl. ¶ 6)  Defendant's reply affidavit acknowledges, however, that Luna holds an E-2 visa and that he is "currently authorized to enter the United States."  (Luna Repl. Aff. ¶ 2)  Given these circumstances, Luna has not demonstrated that his Mexican citizenship presents any obstacle to him appearing in a New York courtroom.  In any event, the Second Circuit – in the forum selection context – has recognized that physical appearance in court is not a prerequisite to having one's "day in court."  Effron, 67 F.3d at 11 ("A plaintiff may have his 'day in court' without ever setting foot in a courtroom." (citing Gray v. Great Am. Recreation Ass'n, 970 F.2d 1081, 1082 (2d Cir. 1992)); see also Calix-Chacon v. Global Int'l Marine, Inc., 493 F.3d 507, 515 (5th Cir. 2007) ("[A]s the Second Circuit has held, with modern conveniences of electronic filing and videoconferencing, '[a] plaintiff may have his []day in court[] without ever setting foot in a courtroom.'" (quoting Effron, 67 F.3d at 11)); Universal Grading Serv., 2009 U.S. Dist. LEXIS 49841, at *67-68 ("There is no evidence here that plaintiff . . . would not be able to participate in proceedings in California via telephone or videoconference. Accordingly, even accepting plaintiff['s] . . . allegations concerning his medical condition as true, I conclude that plaintiff . . . has not established that enforcement of the forum selection clause would result in grave unfairness."); Novak v. Tucows, Inc., No 06 Civ. 1909 (JFB), 2007 U.S. Dist. LEXIS 21269, at *33 n.8 (E.D.N.Y. Mar. 26, 2007) ("Even if [plaintiff] were unable to personally attend proceedings in Canada, such deprivation does not necessarily constitute a denial of his day in court.  This Circuit has held that '[t]he right to a day in court means not the

actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard.'" (quoting Effron, 67 F.3d at 11 (quoting Olsen v. Muskegon Piston Ring Co., 117 F.2d 163, 165 (6th Cir. 1941)))).

 Finally, Luna cites to the fact that he has initiated quasi-bankruptcy proceedings in Mexico – termed "Suspension de Pagos" – where the Bank has been named as a creditor. (Luna Br. 9)  Luna argues that "as a result of these concurrent proceedings, there is a risk of multiple and inconsistent outcomes among American and Mexican courts."  (Id.)  To the extent that Luna is arguing that enforcement of the forum selection clause under these circumstances would contravene a strong public policy of the forum state, he is incorrect.  The Supreme Court has made clear that such clauses should be enforced barring exceptional circumstances.  See generally M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  Indeed, this nation's courts have a policy of exercising jurisdiction despite the existence of parallel foreign proceedings. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), and the "existence of a parallel foreign proceeding does not negate" that obligation.  Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006).  The Second Circuit has stated that "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict.  Rather, '[p]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.'"  Id. (quoting China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)).

 Accordingly, the existence of parallel proceedings in foreign (or domestic) fora is not sufficient to overcome the presumption of enforceability.  See Indem. Ins. Co. of N. Am. v.

K-Line Am., Inc., No. 06 Civ. 0615 (BSJ), 2008 U.S. Dist. LEXIS 71931, at *30-31 (S.D.N.Y.

Feb. 27, 2008) ("Many of the Plaintiffs argue that litigating all of the cases in a single forum

would promote judicial economy and fairness. . . . They contend that having to litigate claims

from the same casualty in two different fora would be unduly burdensome.  However, efficiency

and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory

forum selection clause." (citing La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.,

No. 02 Civ. 40 (JSM), 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) ("[Defendant] argues

that [Plaintiff]'s forum selection clause should not be enforced because it would violate

principles of judicial efficiency and uniformity to have [Defendant] litigate against Plaintiff in

New York and then travel to France to litigate against [Plaintiff] about the same transaction.

Admittedly, it might be more efficient to dispose of the entire case in one court, but that is not

the standard for overcoming a forum selection clause."); Street, Sound Around Electronics, Inc.

v. M/V Royal Container, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple

parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the

forum selection clause."))); Glyphics Media, Inc. v. M.V. "Conti Sing.", 02 Civ. 4398 (NRB),

2003 U.S. Dist. LEXIS 4387, at *17 (S.D.N.Y. Mar. 21, 2003) ("[T]his court has held on more

than one occasion that the possibility of multiple parallel proceedings is not sufficient to rebut

the presumption of enforceability of an otherwise valid forum selection clause. . . .").[4]

---

[4]  In his reply brief, Luna argues for the first time that this Court should extend comity to the
Mexican quasi-bankruptcy proceeding.  (Luna Reply Br. 4-5)  "[N]ew arguments may not be
made in a reply brief," Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir.
1999), and this Court will therefore not consider Luna's comity argument.  See In re Dobbs, 227
Fed. Appx. 63, 64 (2d Cir. 2007) (unpublished opinion) ("[I]t was entirely proper for the District
Court to decline to consider debtor-appellant's argument, raised for the first time in its reply brief
. . . .").

In sum, Luna has failed to rebut the presumption of enforceability accorded the forum selection clauses under the circumstances here, and his motion to dismiss will be denied.[5]

## II.   LUNA'S REQUEST FOR A STAY OF THESE PROCEEDINGS WILL BE DENIED

As an alternative to dismissal, Luna requests that this Court stay this action "until all necessary parties have been served."  (Luna Br. 18)  Luna contends that it "behooves the parties and the Court to postpone any further proceedings, hearings, and litigation deadlines, until all parties have been served in this action or after a reasonable time for [Plaintiff] to perfect service on the other Defendants."  (Id.)  Luna also speculates that "each foreign party would no doubt make similar arguments [to those] raised herein."  (Id.)

A district court may stay an action pursuant to "the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936). In determining whether a stay request should be granted, courts in this Circuit generally consider:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.Inc., 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007) (quoting GTFM, Inc. v. Park, No. 02 Civ. 7020 (DLC), 2002 WL 31890940, at

---

[5]  Luna's forum non conveniens argument will not be separately analyzed.  Where a foreign selection clause is found mandatory and otherwise enforceable, the Court "need not proceed with a forum non-conveniens analysis. . . ."  Langsam v. Gardens, 08 Civ. 2222 (WCC), 2009 U.S. Dist. LEXIS 52597, at *15-16 (S.D.N.Y. June 15, 2009); see also Blanco v. Banco Indus. De Venezuela, S.A., 997 F.2d 974, 979-80 (2d Cir. 1993) (holding that standard forum non conveniens analysis applies when a forum selection clause is merely permissive, and that M/S Bremen controls when the clause is mandatory).

*2 (S.D.N.Y. Dec. 30, 2002)).  "These factors are to be balanced, with the principal objective

being the avoidance of unfair prejudice." Id. (citing Consol. Edison Co. v. United States, 30 F.

Supp. 2d 385, 389 (S.D.N.Y.1998) (declining to stay a declaratory judgment action upon

balancing of factors)).  "The party moving for a stay 'must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which

he prays will work damage to someone else.'" Authors Guild, Inc. v. Dialog Corp. (In re

Literary Works in Elec. Databases Copyright Litig.), M-21-90 (GBD), 2001 U.S. Dist. LEXIS

2047, at *6 (S.D.N.Y. Feb. 27, 2001) (quoting Landis, 299 U.S. at 255).

              Luna has not demonstrated that a stay is appropriate here.  He has not explained

how moving forward with this action will unfairly prejudice him, nor has he cited any authority

for the proposition that this Court should stay an action until all foreign defendants are served.

Furthermore, courts generally give weight to a plaintiff's strong interest in proceeding with its

litigation.  See Lasala v. Needham & Co., 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) ("Courts

are generally reluctant to stay proceedings because they are concerned with vindicating the

plaintiff's right to proceed with its case." (citing An Giang Agric. & Food Import Export Co. v.

United States, 350 F. Supp. 2d 1162, 1164 n.3 (Ct. Int'l Trade 2004) ("[U]nderpinning much of

the case law [in this  area] – implicitly, if not explicitly – is a concern for the rights of assertedly

aggrieved plaintiffs to seek redress in the courts.")); see also Hicks v. City of New York, 268 F.

Supp. 2d 238, 241 (E.D.N.Y. 2003) ("[A]bsent a showing of undue prejudice upon defendant or

interference with his constitutional rights, there is no reason why plaintiff should be delayed in

its efforts to diligently proceed to sustain its claim."); McDonald v. Piedmont Aviation, 625 F.

Supp. 762, 767 (S.D.N.Y. 1986) (in denying defendant's motion for a stay, court "upholds

plaintiff's right to chart the course of his own litigation and to prosecute his claims in the manner of his choice").

Here, the Bank would be prejudiced if a stay were issued, because a stay would delay the Bank's right to pursue recovery on the Notes. See Greystone CDE, LLC v. Santa Fe Pointe, L.P., No. 07 Civ. 8377 (RPP), 2008 WL 482291, at *2 (S.D.N.Y. Feb. 20, 2008) (denying stay when it would prejudice plaintiff from seeking payment claims against defendants). In requesting a stay, Luna does not demonstrate unfair prejudice, but merely argues that he lacks the financial resources to litigate both in New York and in Mexico. This is insufficient to justify a stay under the circumstances here. See Motorola, Inc. v. Abeckaser, No. 07 Civ. 3963 (CPS), 2009 U.S. Dist. LEXIS 24855, at *7 (E.D.N.Y. Mar. 25, 2009) ("Other than referring to defendants' . . . potential Fifth Amendment rights . . . as well as defendants' interest in preserving their financial resources, defendants have not identified any specific manner in which they will suffer undue prejudice absent a stay."); cf. Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration.").

The other factors – the interests of the courts, the interests of persons not parties to the civil litigation, and the public interest – are either neutral or weigh in favor of denying the stay. See Motorola, Inc., 2009 U.S. Dist. LEXIS 24855, at *8 ("[A] court's interest is usually best served by discouraging motions to stay. . . .Courts have an interest in managing their cases and efficiently resolving litigation." (citations omitted)).

## CONCLUSION

For the reasons stated above, Luna's motion to dismiss or, in the alternative, to stay this action, is DENIED.  The Clerk of the Court is directed to terminate the motion (Docket No. 11).

Dated:      New York, New York
            September 24, 2010

                              SO ORDERED.

                              Paul G. Gardephe
                              United States District Judge